**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| RIO BRAVO PRODUCE, LTD LLC, | ) | CIVIL ACTION |
| GR PRODUCE, INC. | ) | |
| KINGDOM FRESH PRODUCE, INC. | ) | |
| I KUNIK COMPANY, INC. | ) | |
| FIVE BROTHERS JALISCO | ) | Case No. SA 13 cv 0444 |
| PRODUCE, INC. d/b/a | ) | |
| BONANZA 2001 | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL BANK of COMMERCE | ) | |
| and | ) | |
| WALTER SCOTT JENSEN, individually, | ) | |

Defendants.

**FIRST AMENDED COMPLAINT**

For their first amended complaint, Plaintiffs respectfully state as follows:

<u>THE PARTIES</u>

1.  Plaintiffs are:

    (a)  Rio Bravo Produce Ltd, LLC ("Rio Bravo"), with an office in Edinburg, Texas and operating its business under a valid PACA license which the United States Department of Agriculture (USDA) granted to plaintiff.

    (b)  GR Produce, Inc. ("GR Produce"), with an office in McAllen, Texas and operating its business under a valid PACA license which the USDA granted to plaintiff.

(c) Kingdom Fresh Produce, Inc. ("Kingdom Fresh"), with an office in Donna, Texas and operating its business under a valid PACA license which the USDA granted to plaintiff.

(d) I Kunik Company, Inc.("I Kunik"), with an office in McAllen, Texas and operating its business under a valid PACA license which the USDA granted to plaintiff.

(e) Five Brothers Jalisco Produce, Inc. d/b/a Bonanza 2001 ("Bonanza") with an office in Pharr, Texas and operating its business under a valid PACA license which the USDA granted to plaintiff.

Rio Bravo, GR Produce, Kingdom Fresh, I Kunik, and Bonanza are referred to collectively as the "Plaintiffs."

2. Plaintiffs sell wholesale quantities of perishable agricultural commodities ("Produce") in interstate commerce.

3. Defendants are:

a) International Bank of Commerce (the "Bank"), with an office in Laredo Texas and the primary banking institution for Delta Produce, L.P ("Delta"), Superior Tomato-Avacado, Ltd ("Superior"), Alted, Ltd. ("Alted"), and Staci Properties, Ltd ("Staci")(collectively the "Debtors");

b) Walter Scott Jensen ("Mr. Jensen") is an officer and director of the Debtors and, upon information and belief, was a person in a position to control PACA trust assets of Delta and Superior;

2

The Bank and Mr. Jensen are collectively referred to as "Defendants."

4. Mr. Jenson, through Delta and Superior, was engaged in the business of negotiating purchases and sales of various types of Produce in wholesale or jobbing quantities and, therefore, meets the statutory definition of a "dealer" under the Perishable Agricultural Commodities Act 1930, 7 U.S.C. §§ 499a-499t (2009 & Supp. 2011)(the "PACA").

5. At all times relevant hereto, Mr. Jensen operated Delta and Superior under licenses the USDA issued to Delta and Superior.

## JURISDICTION AND VENUE

6. The District Court has jurisdiction over this civil action arising under § 5(c)(5) of the PACA, 7 U.S.C. § 499e(c)(5), pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiffs' other claims pursuant to 28 U.S.C. § 1367(a).

7. Venue in this District is based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

## PROCEDURAL HISTORY

8. Delta was engaged in the business of purchasing and selling quantities of Produce in wholesale or jobbing quantities.

9. Superior was engaged in the business of purchasing and selling quantities of Produce in wholesale or jobbing quantities.

10. Alted is a holding company which owns title to the real estate Delta occupied.

11. Alted's sole source of income was rents Delta paid to it.

12. Staci is a holding company which owns title to the real estate Superior occupied.

13. Staci's sole source of income was rents Superior paid to it.

14. The Bank is the largest creditor of the Debtors, with total indebtedness exceeding $6,850,000.

15. The Bank holds a lien on all of the assets of Delta and Superior.

16. The Bank also holds a first mortgage on the real estate Alted owns (hereinafter the "Alted Property") and a first mortgage on the real estate Staci owns (hereinafter the "Staci Property").

17. In 2011 and 2012, the financial condition of Delta and Superior deteriorated such that both companies became severely past due on their obligations to Plaintiffs and other similarly situated PACA trust beneficiaries.

18. Plaintiffs and other PACA creditors commenced three (3) separate actions against Delta, Superior and Mr. Jenson for violations of the PACA trust in the United States District Court, Western District of Texas, respectively captioned as follows: Muller Trading Company, Inc. v. Delta Produce, LP *et al*, 5:12-cv-00046-XR, Wilson Davis Company v. Superior Tomato-Avocado Ltd. *et al*, 5:12-cv-00047-XR, and Rio Bravo Produce Ltd. v. Superior Tomato-Avocado Ltd. *et al*, 5:12-cv-00048-XR (hereinafter the "3 District Cases").

19. On January 3, 2012, Delta sought protection under Chapter 11 of the United States Bankruptcy Code, case number 12-50073.

20. On January 3, 2012, Superior also sought protection under Chapter 11 of the United States Bankruptcy Code, case number 12-50074.

4

21. On January 3, 2012, Atled also sought protection under Chapter 11 of the United States Bankruptcy Code, case number 12-50075.

22. On January 9, 2012, Staci also sought protection under Chapter 11 of the United States Bankruptcy Code, case number 12-50110.

23. On or about January 19, 2012, former Bankruptcy Judge Leif M. Clark signed an order jointly administering all four (4) bankruptcy cases under the caption In Re Delta Produce, L.P, case number 12-50073.  See 12-50073, DE #29.

24. On January 23, 2012 and January 24, 2012, the Honorable Xavier Rodriguez for the District Court signed an order referring the 3 District Cases to the Bankruptcy Court.  See 5:12-cv-46 DE #23, 5:12-cv-47 DE # 14, 5:12-cv-48 DE #12.

25. On January 25, 2012, former Bankruptcy Judge Clark signed an Order establishing PACA claims procedures, giving deadlines for PACA creditors to file claims and for filing objections thereto.  See 12-50073, DE# 52.

26. The deadlines contained in the PACA claims procedures order have passed. Total valid PACA debt is as follows:

| | |
|---|---|
| Delta | $ 1,676,015.25 |
| Superior | $ 1,780,930.82 |
| **Total** | **$ 3,456,946.08** |

27. On or about April 12, 2013 the Bankruptcy Court signed an order allowing for interim distributions to the PACA creditors as follows:

| | |
|---|---|
| Delta | $   389,995.34 |
| Superior | $   495,830.26 |
| **Total** | **$   885,825.60** |

5

See 12-50073 DE#517.

28.     On or about May 24, 2012, Delta and Superior filed an action against the Bank in the United States Bankruptcy Court, Western District of Texas, claiming to be bringing the action on behalf of their respective PACA creditors, adversary case number 12-05079 (the "PACA Adversary").

29.     On or about June 15, 2012, the Bank filed a Motion to Dismiss the PACA Adversary, claiming the Bankruptcy Court lacked subject matter jurisdiction to hear the case "on behalf of" creditors against a non-debtor defendant. See   12-05079, DE #3.

30.     On or about November 15, 2012, Bankruptcy Judge John C. Akard signed an order denying the Bank's Motion to Dismiss the PACA Adversary.   See 12-05079, DE # 17.

31.     On or about November 28, 2012, the Bank filed a notice of appeal of the November 15, 2012 Order denying its Motion to Dismiss.  The District Court assigned the appeal to the Honorable Xavier Rodriguez, case number 5:12-mc-01194-XR.   This appeal remains pending.

32.     On March 11, 2013, Bankruptcy Judge John C. Akard signed an order converting Case number 12-50073 to a Chapter 7 liquidation bankruptcy.   See 12-50073, DE # 489).

## COUNT I

CONVERSION OF PACA TRUST ASSETS

BANK

33.     Plaintiffs restate paragraphs 1-32 and incorporate them for reference herein.

34. Prior to the seeking relief under the Bankruptcy Code, the Debtors entered into a written agreement with Bank relating to the Debtors' assets (the "Security Agreements").

35. Upon information and belief, the Security Agreements defined the terms upon which the Bank would lend certain funds to the Debtors and the Debtors would grant the Bank a security interest in substantially all of the Debtors' assets, including the Debtors' Produce - generated accounts receivable.

36. Pursuant to the Security Agreement, the Bank advanced funds to Debtors.

37. The Debtors granted security interests to the Bank based on collateral, including the Debtors' inventory of Produce and its Produce-generated accounts receivables.

38. The Debtors defaulted under the Security Agreements.

39. Following the Debtors' default, the Bank exercised its rights as a secured creditor.

40. On information and belief, the Bank took possession of some of the Debtors' assets.

41. At the time the Debtors and Bank entered into the Security Agreements, Bank knew or had reason to know the Debtors derived a substantial portion of its revenues from the sale of Produce.

42. At the time the Debtors and Bank entered into the Security Agreements, the Bank knew or had reason to know the Debtors' accounts receivable would be generated through the Debtors' sale and transfer of Produce.

43. Prior to the events giving rise to this claim, the Bank had reason to believe the Debtors were in financial difficulty or presented a problem in recovery of the amounts the Bank

advanced to the Debtors under the Security Agreements or related documents.

44. The Bank continued to accept payments from Delta despite its knowledge of Delta's outstanding obligations to PACA trust beneficiaries.

45. The Bank knew or should have known that the payments it received from Delta were derived from the proceeds of Delta's sale of produce.

46. Upon information and belief, since July 2010, the Bank accepted payments from Delta approximating $2,000,000.00.

47. At all times since its inception in 2005, Superior has been continuously indebted to produce suppliers who were subject to the protections of the PACA trust.

48. The Bank was, at all times, aware that Superior had outstanding obligations to PACA trust beneficiaries when it conducted business with Superior.

49. The Bank was, at all times, aware that Staci's sole source of income was rent Superior paid to it.

50. The Bank knew or should have known that the payments it received from Staci were made up of Superior's sale of produce.

51. Upon information and belief, since July 2010 the Bank accepted payments from Staci totaling more than $977,000.00.

52. The Bank knew or had reason to know of the fact the Debtors had outstanding accounts payable to suppliers of Produce at the time the Bank took possession of some of the Debtors' property.

53. Bank has collected and recovered sums due on accounts receivable the Debtors

generated through transactions in Produce.

54. Bank continues to hold funds recovered from accounts receivable the Debtors generated through transactions in Produce.

55. Upon information and belief, the Bank has not returned the seized funds to the Debtors for payment of the PACA trust beneficiaries.

56. The involuntary transfer of the PACA trust assets to Bank and its failure to return these funds to the proper beneficiaries of the PACA require the Bank to disgorge all seized assets up to the amount sufficient to fully satisfy the Plaintiffs' valid PACA trust claims and the claims of all other valid PACA trust beneficiaries.

## COUNT II

### BREACH OF FIDUCIARY DUTY TO PACA TRUST BENEFICIARIES - MR. JENSEN

57. Plaintiff re-alleges paragraphs 1 through 56 as though fully set forth herein.

58. At all times relevant to this action, Mr. Jensen was an officer or director of the Debtors and the person in charge of the Debtors' business undertakings.

59. At all times relevant to this action, Mr. Jensen was a person engaged in the business of buying or selling Produce in interstate commerce in wholesale or jobbing quantities.

60. At all times relevant to this action, Mr. Jensen was in a position to control and manage the Debtors' operations and had the ability to control the Debtors' financial dealings.

61. At all times relevant to this action, Mr. Jensen had authority to direct the payment of the Debtors' operating funds and otherwise had the power to direct the application or disposition of

the PACA Trust Assets.

62. At all times relevant to this action, Mr. Jensen was an authorized signer on the Debtors' bank account(s) which contained the proceeds of Delta and Superior's Produce sales.

63. As officer or director of the Debtors, Mr. Jensen was a statutory trustee with a duty to safeguard the PACA Trust Assets and required to maintain the trust assets in such a manner as to ensure there were, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as those owed to the Plaintiffs herein.

64. Because Mr. Jensen controlled or was in a position to control the Debtors and the Plaintiffs' invoices have not been paid from PACA trust assets as their bills fell due, Mr. Jensen breached his fiduciary duties under the PACA trust.

65. Mr. Jensen continues to hold any and all PACA Trust Assets having come into his individual possession as trustee for the Plaintiffs' beneficial interest in the PACA trust.

66. Mr. Jensen is personally liable to the Plaintiffs, which liability is joint and several with the Debtors, and any third parties having received any PACA trust assets with actual or constructive notice of the breach of the PACA Trust, for the dissipation of the PACA trust in the current aggregate amount of $2,571,120.48, plus additional interest and collection costs, including attorney's fees, to be satisfied from Mr. Jensen's personal assets.

**FOR THESE REASONS,** Plaintiffs respectfully seek the entry of an Order providing as follows:

A) As to Count I: (i) entering an Order creating a common fund and/or otherwise compelling the preservation of all PACA trust assets in the Bank's possession for

the benefit of Plaintiffs and other similarly-situated PACA trust beneficiaries that properly join in the instant action, (ii) entering an Order directing the Bank to immediately turn over to the registry of the Court all assets impressed with the PACA trust for the benefit of all unpaid trust beneficiaries such as Plaintiffs, (iii) entering a Final Judgment in favor of Plaintiffs and against the Bank in the current amount of $ 2,571,120.48 plus further interest at the statutory rate of .5% per month (6% APR) and collection costs including attorneys' fees, less any actual recovery on other Counts herein.

B) As to Count II, entering Judgment in favor of Plaintiffs and against Mr. Jensen for breach of his fiduciary duties of the PACA Trust, in the current amount of $ 2,571,120.48, plus additional interest at .5% per month (6% APR) and collection costs, including attorneys' fees incurred in this action, less any actual recovery on other Counts herein.

C) Providing such other and further relief as the Court deems appropriate upon consideration of this matter.

Dated: June 3, 2013                Respectfully submitted,

                                   RIO BRAVO PRODUCE LTD, LLC
                                   G.R. PRODUCE, INC.,
                                   KINGDOM FRESH PRODUCE, INC.
                                   I KUNIK COMPANY, INC.
                                   FIVE BROTHERS JALISCO
                                   PRODUCE, INC. d/b/a
                                   BONANZA 2001

                                   By:  /s/ Scott E. Hillison, Esq.

Scott E. Hillison, Esq.
*Pro Hav Vice Forthcoming*
KEATON LAW FIRM, P.C.
707 Lake Cook Road, Suite 300
Deerfield, Illinois 60015
Tel:     847/934-6500
Fax:    847/934-6508
E-mail: hillison@pacatrust.com